**William Allen GRABLE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 5499.**

Supreme Court of Wyoming.

Aug. 13, 1982.
Rehearing Denied Sept. 8, 1982.

Chris J. Nelson of Berger, Sinclair & Nelson, P. C., and Larry R. Cole of Stephens & Cole, Billings, Mont., for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Allen C. Johnson, Sr. Asst. Atty. Gen., for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

THOMAS, Justice.

Arising out of convictions of two counts of forgery and one count of a conspiracy to commit forgery, this appeal presents issues concerning the constitutional right of the appellant to a speedy trial; the admissibility and use of the prior testimony under oath of a key witness who was not available at trial for reasons of health; the sufficiency of the evidence to support convictions of forgery; and the failure to instruct on a defense theory and amendment of the indictment by the instructions given by the court. Following his conviction by a jury on the three counts and the denial of combined motions for judgment of acquittal and for arrest of judgment and for a new trial, the appellant was sentenced to the State Penitentiary for a term of not less than four years nor more than five years on each of the three convictions with the proviso that the sentences should be served concurrently. We shall affirm the convictions and the judgment and sentence of the district court.

The charges upon which appellant was convicted are set forth in the Indictment as follows:

"THE GRAND JURY charges:

\* \* \* \* \* \*

"COUNT I [as renumbered]

"That William Grable, * * * did on or about the first week in December, 1975, in the County of Natrona, State of Wyoming, unlawfully, and falsely make a receipt and invoice and other writing for money and for the delivery of goods and a transfer of other property, to-wit: document captioned 'Invoice' dated September 15, 1975, for the delivery of an oil pump to CaseBeer, Inc., of McPherson, Kansas, for $12,000, signed by one Alvin Dade, a copy of which is attaced [sic] to this Indictment as 'Exhibit A' and by this reference is incorporated herein and made a part hereof, and did attempt to pass as true and genuine the same and did cause to be passed and attempted to be passed as true and genuine the same, knowing the same to be false with intent to prejudice, damage, and defraud a per-

son and persons, to-wit: Oil Resources, Inc., of Billings, Montana, Duel Price and the County of Fremont, Wyoming, and the State of Wyoming, in violation of Wyoming Statutes 1957, as amended, Section 6–17, which is

"COUNT II [as renumbered]

"That William Grable, * * * did, on or about the second week of October, 1975, in the County of Natrona, State of Wyoming, unlawfully and falsely make a receipt and invoice and other writing for money and for the delivery of goods and a transfer of other property, to-wit: a document dated August 23, 1975, for the delivery of an oil pumping unit, a copy of which is attached to this Indictment as 'Exhibit B' and by this reference is incorporated herein and made a part hereof, and did attempt to pass as true and genuine the same and did cause to be passed and attempted to be passed as true and genuine the same, knowing the same to be false with intent to prejudice, damage, and defraud a person and persons, to-wit: Oil Resources, Inc., of Billings, Montana, Duel Price and the County of Fremont, Wyoming, and the State of Wyoming, in violation of Wyoming Statutes 1957, as amended, Section 6–17, which is

"COUNT III [as renumbered]

"That William Grable, * * * did, on or about the 1st week of December, 1975, in the County of Natrona, State of Wyoming, unlawfully, being [one of] two or more persons, conspire to commit a felony, to-wit: forgery of a document captioned invoice described in Count * * * [II], a copy of which is attached hereto as 'Exhibit A' and by this reference is incorporated herein and made a part hereof, in violation of Wyoming Statutes 1957, as amended, Section 6–17, in the State of Wyoming and * * * one or more [of the] persons, * * * [did] an act within the State of Wyoming to effect the object of the conspiracy to commit such felony, to-wit: cause the document to be delivered to Mark Hart of McPherson, Kansas, in violation of Wyoming Statutes 1957, as amended, Section 6–16.1, which is

\* \* \* \* \* \*

"contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Wyoming. * * * "

The statutory provisions cited in the Indictment read as follows:

"Every person who shall falsely make, alter, forge or counterfeit any record or other authentic matter of a public nature, or any charter, letters-patent, deed, lease, indenture, writing obligatory, will, testament, codicil, annuity, bond, covenant, United States treasury note or United States bond, bank bill or note, post note, check or draft, bill of exchange, contract, promissory note, due bill for the payment of money or property, receipt for property or money, power of attorney, any auditor's warrant for the payment of money at the treasury, county order or any accountable receipt, or any order or warrant or request for the payment of money or the delivery of goods or chattels of any kind, or the delivery of any instrument of writing or acquittance, release or receipt for money or goods, or any acquittance, release or discharge for any debt, account, action, suit, demand, or other thing real or personal, or any transfer or assurance of money, moneys, stock, goods, chattels or other property whatever, or any letter of attorney or power to receive money, or to receive or transfer stock or annuities, or to let, lease, dispose of, alien or convey any goods or chattels, lands or tenements or other estate real or personal; or any acceptance or indorsement of any bill of exchange, promissory note, draft or order, or assignment of any bond, writing obligatory, or promissory note for money, or other property, or shall counterfeit or forge the seal or hand writing of another, with intent to damage or defraud any person or persons, body politic or corporate, whether the said person or persons, body politic or corporate reside in or belong to this state or not; or shall utter, publish, pass or attempt to pass as true and genuine, or cause to be uttered, published, passed, or attempted

to be passed, as true and genuine, any of the above named false, altered, forged or counterfeited matters as above specified and described, (knowing the same to be false, altered, forged or counterfeited,) with intent to prejudice, damage or defraud any person or persons, body politic or corporate, whether the said person or persons, body politic or corporate, reside in this state or not, shall be deemed guilty of forgery, and upon conviction thereof shall be punished by confinement in the pentitentiary for a term not more than fourteen years." Section 6–17, W.S. 1957.[1]

"If two or more persons conspire to (a) commit a felony in the State of Wyoming or to commit an act beyond the State of Wyoming which if done in this state would be a felony, and (b) one or more of such persons do any act, within or without the State of Wyoming, to effect the object of the conspiracy, each, upon conviction, shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years or both. A conspiracy may be prosecuted in the county where the conspiratorial agreement or combination was entered into, or in any county where any act or acts evidencing the conspiracy or in any county wherein the furtherance of its purpose took place." Section 6–16.1, W.S.1957 (Cum.Supp.1975).[2]

In attacking his convictions under these statutes, the appellant articulates the issues as follows:

"I. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION OF FORGERY.

"II. THE COURT ERRED BY REFUSING TO GIVE DEFENDANT'S INSTRUCTION NOS. GF & GE.

"III. INSTRUCTION NO. 5, SPECIFICALLY PARAGRAPH III THEREOF, CONSTITUTED AN IMPROPER AMENDMENT OF THE INDICTMENT.

"IV. VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHT TO SPEEDY TRIAL ON THE BASIS OF PRETRIAL DELAY.

"V. VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS RESULTING FROM UNREASONABLE DELAY PRIOR TO TRIAL.

"VI. THERE WAS INSUFFICIENT INDEPENDENT EVIDENCE TO PROVE A CONSPIRACY.

"VII. IMPERMISSIBLE HEARSAY WAS ADMITTED TO THE PREJUDICE OF THE DEFENDANT.

"VIII. THE COURT COMMITTED REVERSIBLE ERROR WHEN IT IMPROPERLY LIMITED THE USE OF THE FORMER TESTIMONY OF MARK HART.

"IX. BY ALLOWING THE FORMER TESTIMONY OF MARK HART INTO EVIDENCE THE DEFENDANT'S RIGHTS TO CONFRONTATION AS GUARANTEED HIM BY THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF WYOMING WERE VIOLATED."

In its brief as appellee, the State sets forth the issues as it perceives them to be in the following way:

"I. WERE APPELLANT'S RIGHTS TO A SPEEDY TRIAL AND DUE PROCESS OF LAW VIOLATED BY THE PASSAGE OF 457 DAYS BETWEEN REVERSAL OF HIS PRIOR CONVICTION IN THIS CASE AND HIS NEW TRIAL?

"II. WAS APPELLANT'S RIGHT TO CONFRONTATION OF AN ADVERSE WITNESS AS GUARANTEED BY THE U. S. AND WYOMING CONSTITUTIONS VIOLATED BECAUSE THE TESTIMONY OF MARK HART, WHICH WAS TAKEN AT THE FIRST TRIAL IN THIS CASE, WAS READ TO THE JURY WHEN HART WAS UNAVAILABLE TO TESTIFY IN THE SECOND TRIAL?

"III. DID THE TRIAL JUDGE COMMIT REVERSIBLE ERROR WHEN HE

---

1. Now found in § 6–2–101, W.S.1977.

2. Now found in § 6–1–117, W.S.1977.

LIMITED THE USE OF THE PRIOR TESTIMONY OF MARK HART?

"IV. WAS THERE SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION FOR FORGERY? WAS THERE SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION FOR CONSPIRACY?

"V. DID THE TRIAL JUDGE COMMIT REVERSIBLE ERROR BY PERMITTING INADMISSIBLE HEARSAY EVIDENCE TO BE PRESENTED TO THE JURY?

"VI. DID INSTRUCTION NO. 5 CONSTITUTE AN IMPERMISSIBLE AMENDMENT OF THE INDICTMENT?

"VII. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN REFUSING INSTRUCTIONS GF AND GE WHICH WERE OFFERED BY APPELLANT?"

We shall treat with these issues in what we perceive to be appropriate groupings. We shall deal first of all with those issues relating to the appellant's right to a speedy trial (Issues Nos. IV and V as they appear in the appellant's Statement of Issues). We next shall deal with the admissibility and use of the testimony under oath at a prior trial of Mark Hart (Issues VII, VIII and IX of the issues set forth by the appellant). We then will treat with the instructional errors asserted by the appellant (Issues II and III from appellant's Statement of Issues). Finally we shall pursue the sufficiency of the evidence to sustain the convictions of forgery and conspiracy (Issues I and VI from the issues set forth by the appellant).

While additional material facts will be included with the discussion of the several issues, an overview of these facts will be helpful in pursuing the issues.

On approximately September 21, 1975, a Lufkin 320 oil well pumping unit was stolen from a warehouse yard of Gulf Oil Company in the Steamboat Buttes Field, located about 30 miles west of Riverton, in Fremont County, Wyoming. Around the first week in December of 1975, approximately two and one-half months later, the stolen oil well pumping unit was discovered in the possession of Oil Resources, an independent oil producing firm headquartered in Billings, Montana. The oil well pumping unit was situated on a well in an oil field located near Worland in Washakie County, Wyoming. At that time there was found propped up near the appropriate place where it should have been attached a tag bearing a Lufkin designation number "A–320–D–100–32–G." The tag also reflected 138 as a serial number. Subsequent investigation disclosed this tag was not appropriate for the type of oil well pumping unit which was involved, and that it in fact described a different type pumping unit entirely.

Oil Resources had purchased the oil well pumping unit from D & F Oil Field Supply & Equipment in Casper, Wyoming, on September 22, 1975, and had paid the sum of $18,025 for it. D & F Oil Field Supply & Equipment was owned by Donald Murphy and Floyd Suchta. When they were contacted by Oil Resources about the fact that the oil well pumping unit was stolen, they both expressed disbelief that such was the fact, and they presented a handwritten invoice dated September 15, 1975, which indicated that they had purchased the oil well pumping unit from Casebeer-Hart Oil Production Equipment Co., an oil field equipment brokerage firm located in McPherson, Kansas. The actual manner in which the oil well pump was acquired by D & F Oil Field Supply & Equipment remains obscure in this record.

The record does disclose by the testimony of Mark Hart, which actually was his testimony from a prior trial,[3] that Mark Hart had sold some smaller pumping units to Grable in June of 1975 in Kansas. He then sent two invoices regarding those transactions to Grable's Casper, Wyoming, business address. Hart then traveled to Casper, Wy-

---

3. This case is before the court for the second time. Prior convictions of the appellant of two counts of forgery and three counts of conspiracy previously were reversed. *Grable v. State*, Wyo., 601 P.2d 1001 (1979).

oming, in October of 1975 for a hunting expedition. At that time he visited Grable's place of business to determine if Grable had any equipment either to buy or sell. On that occasion Grable told Hart that he had not received the invoices which Hart had earlier mailed, and he requested from Hart two blank invoices with the Casebeer-Hart Oil Production Equipment Co. letterhead. These were furnished by Hart.

Several days later, when Hart again was at Grable's place of business, Floyd Suchta gave him a copy of the invoice which had been prepared from one of the blank copies previously furnished to Grable. Hart did not examine the invoice at that time, but when he later did examine it he discovered that it showed the sale on August 23, 1975, to D & F Oil Field Supply of "One A–320D–100–32G Order No. 195449 Ser # 138." The reader will note that this identification matched that on the spurious tag which had been discovered on the stolen oil well pumping unit.

Hart then testified to a subsequent meeting at which, according to Hart, Grable was distressed about the stolen unit. On that occasion, Hart, at the request of Grable and Suchta, furnished another invoice in his own handwriting dated September 15, 1975, depicting the sale of the unit from Casebeer-Hart to D & F Oil Field Supply. At that time still another invoice was prepared. This latter invoice showed the sale of a D320 Lufkin Pumping Unit, Serial # 138, Type A–320–D–100–32–G, from one Alvin Dade to Hart Oil Equipment Company, Box 111 Lakeside, McPherson, Kansas 67460. Expert testimony at the trial served to show that the handwriting on the latter invoice was that of the appellant, and that the appellant also had prepared the August 23, 1975, invoice showing the sale to D & F Oil Field Supply.

The invoice from Alvin Dade was the subject of the first count of the indictment; the August 23, 1975, invoice was the subject of the second count of the indictment; and the Alvin Dade invoice was the subject of the conspiracy charge set forth in the third count in the indictment of which appellant was convicted.

These are the material underlying facts out of which the appellant's conviction arose. To the extent that additional facts are deemed necessary they will be related in connection with the discussion of the specific issues in this case.

■ We turn first, then, to the claim of the appellant that he was denied his right under the federal and state constitutions to a speedy trial. This court has adopted the balancing principle set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in those cases in which there has been considered the issue of a right to a speedy trial. *Cherniwchan v. State*, Wyo., 594 P.2d 464 (1979); *Stuebgen v. State*, Wyo., 548 P.2d 870 (1976). In making this determination the court has adopted the four factors alluded to in *Barker v. Wingo*, supra, as guidelines in determining whether a constitutional deprivation of a right to a speedy trial has occurred. *Cook v. State*, Wyo., 631 P.2d 5 (1981); *Robinson v. State*, Wyo., 627 P.2d 168 (1981); *Estrada v. State*, Wyo., 611 P.2d 850 (1980). Those four factors are: (1) The length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.

In this case there arises an issue which is novel in this jurisdiction with respect to when the appellant's right to a speedy trial begins to accrue. As we have indicated, the appellant's earlier conviction was reversed by this court. The appellant contends that October 26, 1979, the date the opinion in that case was filed, is the date of inception in assessing his right to a speedy trial. The State, on the other hand, contends that the proper date is that on which the prosecution requested a new trial, which is January 22, 1980. This situation, of course, does not conform to the general requirement that, "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provisions of the Sixth Amendment." *Dillingham v. United*

*States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). The case does, however, match the proposition invoked for determining how long a delay is too long. The cases are approached on an ad hoc basis because the answer will vary under the facts and circumstances present in each case. *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Chernwichan v. State, supra,* at 468.

 Under the system of jurisprudence in vogue in the State of Wyoming, district courts have jurisdiction of all criminal cases except those for which other provision is made. Article 5, § 10 Wyoming Constitution. *Fuller v. State,* Wyo., 568 P.2d 900, (1977). In the ordinary case the accused's right to a speedy trial will begin to accrue once criminal jurisdiction is invoked. *Estrada v. State, supra,* at 853. Following a reversal and remand by this court, the district court has jurisdiction only after a mandate of reversal is received. *State ex rel. Fawcett v. Board of County Com'rs of Albany County,* 73 Wyo. 69, 273 P.2d 188 (1954). The mandate of reversal was issued in the prior appeal on November 27, 1979, and was filed in the district court on December 4, 1979. It is our conclusion that it is this date, not either of the dates suggested by the parties, on which the appellant's speedy trial right began to accrue for purposes of the second trial.

 On January 22, 1980, the State filed its request for a new trial, which the request indicated should be scheduled to last two weeks. The district court set the matter for trial on August 4, 1980. On August 1, 1980, the appellant filed an affidavit of prejudice in support of a motion to remove the sitting judge from the case. At the same time there were filed a Motion in Limine, a Motion for Assignment of the Case, and a Motion to Dismiss for Lack of a Speedy Trial. The original trial date then was vacated and the cause reset for the nearest available two-week period in front of the second district judge. There followed a defense motion for counsel to withdraw on September 11, 1980, and a hearing was held on previously filed motions. The

trial then commenced on January 26, 1981, and the verdict of the jury finding the appellant guilty of the two counts of forgery and the single count of conspiracy was returned on February 4, 1981. As we compute the total delay from the date of the district court becoming revested with jurisdiction, it amounted to 419 days, or approximately thirteen and one-half months until trial. This compares with an eight-month delay if the trial had been held as originally scheduled.

An examination of the record with respect to the four factors which this court has adopted discloses that the reason for the eight-month delay essentially was the unusually long time necessary to try the case because of its complexities. This reason was in part attributable to Natrona County's busy court docket. See *Robinson v. State, supra.* The subsequent five and one-half month delay was necessitated when the trial judge was challenged by the appellant, and there then was no available trial date on the calendar of the second district judge. In the meantime, original counsel was given permission to withdraw from the case, and new counsel appeared to represent the appellant. Under the circumstances, the State has met its burden with respect to a showing that the delay was reasonable and necessary.

In asserting his right, the defendant filed two motions to dismiss for lack of a speedy trial. The first was filed on August 1, 1980, at the same time that he sought a change of judge. The second was filed on January 13, 1981. No hearing was held on the first motion, nor did the appellant request such a hearing. The second motion was denied by the second district judge. In his decision letter the district judge found that there was no prejudice to the defendant from the delay, that the issue had not been presented in a timely manner, and that the unusual length of time anticipated limited the availability of an early time on the court's schedule. The district judge further found that the challenge to the first assigned judge occurred so close to the initial trial date that another judge could not reasonably

handle the case at the time at which it first was set.

■■ While the appellant need not show that he was specifically prejudiced to prove a speedy trial violation, *Moore v. Arizona*, supra; *Estrada v. State*, supra, at 855, prejudice should be considered in connection with the balancing test. The record in this case fails to show that there was any oppressive pretrial incarceration; any unusual pretrial anxieties; or any impairment of the defense offered. These factors should be taken into account to reach a determination as to actual prejudice. *Barker v. Wingo*, supra, 407 U.S. at 532, 92 S.Ct. at 2192. While there did occur in this instance a disruption in the appellant's life and business, it was no more severe than that experienced in any other case in which a criminal charge is assessed. Furthermore, there was no loss of any evidence which essentially had been preserved by the first trial, and the appellant was not incarcerated.

It is our conclusion that in applying the four factors set forth in *Barker v. Wingo*, supra, to balance the rights of society with the appellant's right to a speedy trial, there was no constitutional deprivation of a speedy trial in this instance. The State acted in good faith and sought to bring the matter before the court as early as it possibly could. The period of the delay is attributable either to the state of the docket in Natrona County, Wyoming, and the unusual length of time necessary to try the case, or it is chargeable to the appellant as the result of his own choice. See *Cosco v. State*, Wyo., 503 P.2d 1403 (1972), cert. denied 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973).

We next consider the claims of the appellant relating to his constitutional prerogative of confronting witnesses against him, the admission of hearsay improperly, and limitation upon the use of former testimony. As previously noted, the testimony of Mark Hart was produced by the transcript of his testimony at the earlier trial. The paramount significance of that testimony not only is apparent from a perusal of the record, but it is conceded by the appellee.

The appellee urges, however, that the testimony from the previous trial was properly admitted pursuant to Rule 804(b)(1), Wyoming Rules of Evidence, relating to the admissibility of former testimony. This rule provides in pertinent part as follows:

"(b) *Hearsay Exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) Former Testimony.—Testimony given as a witness at another hearing of the same or a different proceeding, or any deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination;"

Prior to the adoption of the Wyoming Rules of Evidence this court approved the use at trial of the prior testimony of a witness who became unavailable because of the exercise of a privilege. *Simms v. State*, Wyo., 492 P.2d 516 (1972), cert. denied 409 U.S. 886, 93 S.Ct. 104, 34 L.Ed.2d 142 (1972).

■ For testimony to be received pursuant to Rule 804(b)(1), W.R.E., the following factors should be present: (1) The witness must be unavailable; (2) the former testimony must have been given by the witness while he was testifying as a "witness," that is while under oath, in a hearing or deposition in the same or a different proceeding; and (3) the party against whom the testimony is offered must have had the opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination at the time of the former testimony. See 4 Louisell and Mueller, Federal Evidence, § 487 (1980).

■ Rule 804(a), W.R.E., defines unavailability as follows:

"(a) *Definition of unavailability.*—'Unavailability as a witness' includes situations in which the declarant:

"(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or

"(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

"(3) Testifies to a lack of memory of the subject matter of his statement; or

"(4) Is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity; or

"(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means."

The record discloses that Hart was in Casper and available to testify on August 4, 1980, when the case was first set for trial. He was served at that time with a subpoena to attend the trial on the date for which it was reset, but he then departed from Wyoming and resided in Dallas, Texas. The record then reflects that the following events occurred:

December 9, 1980—A letter was sent by the county attorney's office to Hart, reminding him of the date and time of the rescheduled trial.

January 5, 1981—A copy of the subpoena served on Hart when he was in Casper was sent to him as a further reminder.

January 7, 1981—Airline reservations were made for Hart to travel to Casper, and he was informed by a message left on his telephone answering device of the flight schedule which later was confirmed during a return telephone call from Hart.

January 14, 1981—Hart telephoned the director of the Victim-witness Assistant Program in the county attorney's office, and advised her that he would not come to Casper to testify because of medical problems.

January 16, 1981—The Career Criminal Prosecuting Unit liaison officer called Hart by telephone at his place of employment to discuss his role as a witness in this case, and Hart informed him of his severe medical problems and his inability to travel to testify at the trial.

January 19, 1981—Attempts to contact Hart on this date were unsuccessful.

January 20, 1981—Hart was again contacted by the Career Criminal Prosecuting Unit liaison officer, and Hart reasserted that his medical condition made it impossible for him to travel to Casper to testify. Hart then was advised to obtain a letter from a physician regarding his condition.

January 21, 1981—A letter from Paul B. Mascarenhas, M.D., of Altick Surgical and Medical Associates, Dallas, Texas, was sent, which advised that Hart was under active medical treatment and unable to travel for the foreseeable future.

January 22, 1981—The Mascarenhas letter was received in the office of the Natrona County Attorney.

The prosecution has the burden of establishing the unavailability of a witness to testify at trial despite good faith efforts to obtain his presence. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Futile acts are not required, and the lengths to which the prosecution is required to proceed in order to produce a witness is a question of reasonableness. *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The determination of the unavailability of a witness is a matter which rests in the discretion of the trial court, and that determination will not be overturned absent a showing of abuse of the court's discretion. *Martinez v. State,* Wyo., 611 P.2d 831 (1980); *United States v. Amaya,* 533 F.2d 188 (5th Cir. 1976), reh. denied 540 F.2d 1086 (5th Cir. 1976), cert. denied 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *United States v. Bell,* 500 F.2d 1287 (2nd Cir. 1974); *State v. Maestas,* 92 N.M. 135, 584 P.2d 182 (1978). Under the circumstances of this case, we cannot conclude that the district court acted in a manner which exceeded the bounds of reason, nor that it was guilty of any abuse of discretion. The trial court's determination that Hart was unavailable despite the good faith efforts of the prosecution is affirmed. *Martinez v. State,* supra, at 838.

The appellant argues that the State failed to secure the presence of Hart

through the reciprocal agreement as to attendance of witnesses, § 7–3–302, W.S. 1977. Such efforts, however, would have been unavailing because Texas is not a signatory state to the Interstate Compact. Both Texas (Texas Code Criminal Procedure Annotated, Art. 24.28 (Vernon Supplement 1979)), and Wyoming (§ 7–11–407–409, W.S.1977), have passed the Uniform Act to Secure Attendance of Witnesses from Without a State in a Criminal Proceeding. However, the trial court was not advised of the availability of this procedure to attempt to secure Hart's testimony. Furthermore, given the medical excuse which was tendered, there is no reason to believe that Texas would have required Hart's attendance under the circumstances.

 As to the claim that the appellant was deprived of his constitutional right to confront the witnesses against him (Amendment VI to the Constitution of the United States of America; Art. 1, § 10, Constitution of the State of Wyoming), the law is clear to the effect that this procedure does not infringe upon that constitutional right. *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). In the constitutional context, courts have required the following standards be met in order for prior testimony to be admissible: First, the prosecution must demonstrate good faith efforts to obtain the presence of the witness for trial have been unavailing; and, secondly, the witness must have been subject to adequate cross-examination at the previous hearing or trial. *Ohio v. Roberts*, supra, 448 U.S. at 65, 100 S.Ct. at 2538; *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Martinez v. State*, supra. As discussed above, the good faith efforts of the State were not successful in this instance. The record discloses the identity of the interest of the appellant in both trials, and the adequacy of the cross-examination at the previous trial. The testimony meets the requirement that there "are indicia of reliability" sufficient to afford the trier of fact a satisfactory basis for evaluating the truth of the prior testimony (*Mancusi v. Stubbs*, supra, 408 U.S. at 213, 92 S.Ct. at 2313; *Martinez v.*

*State*, supra, at 837), and the purpose in conducting cross-examination at the previous trial was identical to that present in the later proceeding and cross-examination during a second trial would not have touched upon any new and significant line of material inquiry. *Ohio v. Roberts*, supra, 448 U.S. at 70–74, 100 S.Ct. at 2541–2543; *Martinez v. State*, supra, at 839. The questioning of Hart on cross-examination at the former trial and the circumstances presented by this case "afforded substantial compliance with the purposes behind the confrontation requirement." *California v. Green*, supra, 399 U.S. at 166, 90 S.Ct. at 1939.

 The appellant also complains of the limitation placed by the trial court upon the use of Hart's prior testimony by refusing to permit the appellant to introduce those portions of Hart's prior testimony elicited during cross-examination on behalf of a co-defendant by counsel other than appellant's counsel. The appellant cites no authority for his claim that this limitation was impermissible. While the denial of the right of cross-examination clearly would be error, the extent and manner of cross-examination are matters which are vested within the discretion of the trial court, and its ruling on such evidence will not be overturned in the absence of a clear abuse of discretion. *Nimmo v. State*, Wyo., 603 P.2d 386 (1979). The record discloses that the testimony which counsel wished to introduce duplicated testimony adduced by appellant's counsel on cross-examination at the former trial. Counsel's desire to have the matter reiterated related to his assertion on argument that he would show that Hart had lied twice about the same subject matter. Under the circumstances, we cannot conclude that the trial court abused its discretion in limiting the introduction of the duplicative testimony.

 Finally, with respect to Hart's testimony, the appellant complains of the admission of statements attributed to Suchta during that testimony. These were admitted over the objection of the appellant un-

der the theory that they were not hearsay because under Rule 801(d)(2)(E), W.R.E., they were statements made by a co-conspirator during the course of the conspiracy. Since the appellant also fails to cite any authority in support of his argument that the admission of this testimony was error, we need not address the issue. Our rule is that we are not required to deal with issues which are not supported by pertinent authority or cogent argument. *Jackson v. State*, Wyo., 624 P.2d 751 (1981), cert. denied 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981); *Weddle v. State*, Wyo., 621 P.2d 231 (1980); *Cherniwchan v. State*, supra, at 470.

■ With respect to the instructions given by the court, the appellant complains of the failure to give his proffered Instructions Nos. "GE" and "GF." He contends that these related to one of his theories of the case to the effect that even if the jury found that he authored the documents in question those acts did not constitute forgery under § 6–17, W.S.1957. He also complains that Instruction No. 5 which was read to the jury constituted an improper amendment of the indictment since it was one of substance and not of form only. We do not agree with either of these contentions. In Wyoming a criminal defendant has a right to have his theory of the case affirmatively presented to the jury. *Goodman v. State*, Wyo., 573 P.2d 400 (1977); *Benson v. State*, Wyo., 571 P.2d 595 (1977); *Thomas v. State*, Wyo., 562 P.2d 1287 (1977); *Blakely v. State*, Wyo., 474 P.2d 127 (1970); and *State v. Hickenbottom*, 63 Wyo. 41, 178 P.2d 119 (1947). The defendant still must tender a proper instruction, however, and there must be evidence in the record to sustain his theory of the case. *Goodman v. State*, supra.

The requested instructions offered by the appellant were:

### "INSTRUCTION NO. GE

"If you find that the Defendant did in fact forge the documents in question, but did not intend at the time of the forgeries to defraud anyone as defined by these instructions, that the act was done for the purposes of causing someone to escape detection and punishment, then you must return a verdict of not guilty as the Defendant has not been charged with being an accessory after the fact."

### "INSTRUCTION NO. GF

"Every person not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity, to any person guilty of a felony, who shall after the commission of such crime, harbor, conceal or assist any such offender, within [sic] intent that he shall escape from detection or punishment, shall be deemed an accessory after the fact, and may be indicted, informed against, tried, convicted and punished, though the principal be neither charged, indicted or tried."

■ Rule 51, W.R.C.P., made applicable in criminal cases by Rule 31, W.R.Cr.P., provides in pertinent part as follows:

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * * "

The purpose of this requirement is to insure that the trial judge is aware of the nature and grounds of the objection so that he has the opportunity to correct any possible error. *Danculovich v. Brown*, Wyo., 593 P.2d 187 (1979); *Schwager v. State*, Wyo., 589 P.2d 1303 (1979).

■ After being informed by the trial court of the need to give specific grounds for his objection, the record discloses the following:

"MR. NELSON [counsel for appellant]: I object to failure to give Instruction GE on the grounds that the jury should be apprised that while they may find the defendant committed the forgeries in the act of concealing deduction [sic], they should be alerted that there is a separate crime and a crime that is not charged herein.

"And the same reasons for the objections for the failure to give Instruction GF."

Appellant's evidence at the trial was all to the effect that he was not present at the times and occasions described in Hart's testimony. He in effect denied any participation in the preparation of or planning relating to the invoices in issue. While it is questionable whether the objection actually used was sufficient to advise the trial judge that these instructions were offered to present his theory of the case, it does not appear that this in fact was his theory of the case. Since the use of these instructions was not supported by evidence at the trial, there was no error in the refusal of the trial judge to give those instructions. The claim of legal impossibility is one of law which will be considered in connection with the discussion of the sufficiency of the evidence.

■■■■■ With respect to the claim of error in giving Instruction No. 5, it should be noted that that is the instruction which set forth the necessary elements of each charge against the appellant. At the instruction conference the appellant objected to this instruction, claiming that it constituted an amendment to the indictment in that the indictment specifically named Suchta and Murphy as the persons with whom Grable allegedly had conspired, whereas the instruction merely required proof of a conspiracy with any other person or persons. Of course, an amendment of an indictment which is one of substance rather than form is not permissible. *Boyd v. State*, Wyo., 528 P.2d 287 (1974), cert. denied 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975). In determining whether the amendment is one of form or substance, the evil sought to be prevented is that of permitting the trial of a defendant on charges not contained in an indictment returned by a grand jury. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

■■■■ Here it is appellant's argument that he was prejudiced because the burden of proof was lessened since under the instruction it was not necessary to prove conspiracy with Suchta and Murphy, but only conspiracy with anyone, in order for the jury to find him guilty of the offenses charged. The case, however, was prosecuted, defended against, and submitted to the jury under the theory that Grable conspired with Suchta and Murphy to forge the questioned documents. This theory is adequately supported by the evidence, and indeed it is difficult from the record to reach any conclusion that Grable might have conspired with any persons other than Suchta and Murphy. The deletion of the references to Suchta and Murphy in the instructions could not have had any effect upon any substantial right of the appellant, and therefore the giving of Instruction No. 5 is not to be considered as error.

Finally we turn to the complaints of the appellant with respect to the sufficiency of the evidence to sustain the convictions of forgery and of conspiracy. The complaints of the appellant are different from the usual invitation for us to reweigh the evidence before the trial court. We, of course, do not do that. *Wells v. State*, Wyo., 613 P.2d 201 (1980); *Bentley v. State*, Wyo., 502 P.2d 203 (1972); *Harris v. State*, Wyo., 487 P.2d 800 (1971). We cannot resolve the complaints of the appellant by a simple reference to our usual view that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and giving the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. E.g., *Mainville v. State*, Wyo., 607 P.2d 339 (1980).

The essence of the claim made by the appellant with respect to the two counts of forgery is that the writings charged in the forgery counts were made subsequent to the sale of the stolen oil well pumping unit to Oil Resources. Appellant contends that since Oil Resources already had parted with its money there could be no advantage taken of that firm when the writings were executed, and consequently at most the appellant was guilty of the uncharged crime of being an accessory after the fact. This

argument, of course, is closely related to the argument concerning the failure to instruct as requested in Instructions GE and GF. Appellant earnestly argues that the only purpose of the writings at the time they were made was to conceal the identity of the person who stole the oil well pumping unit, and that this does not demonstrate the requisite element of intent to defraud.

■ The crime of forgery as defined in the Wyoming statute is one requiring specific intent. Prior cases have characterized the requisite intent as a "fraudulent intent." *Dixon v. Williams*, Wyo., 584 P.2d 1078 (1978); *State Board of Law Examiners v. Goppert*, 66 Wyo. 117, 205 P.2d 124 (1929). The statutory language, however, defining this offense is not as limited as the appellant's argument would assume. Section 6–17, W.S.1957, provides in pertinent part that:

"Every person who shall falsely make, alter, forge or counterfeit * * *; or shall utter, publish, pass, or attempt to pass as true and genuine, or cause to be uttered, published or passed, or attempted to be passed, as true and genuine, any of the above named false, altered, forged or counterfeited matters * * * (knowing the same to be false, altered, forged or counterfeited) *with intent to prejudice, damage or defraud* any person or persons, body politic, corporate, * * * shall be guilty of forgery * * *." (Emphasis added.)

It must be remembered that Oil Resources had in its possession a stolen oil well pumping unit. One of the possible results of the forged documents is that in an action by Oil Resources to recover the purchase price a finder of fact might have been persuaded that the oil well pumping unit in fact was not stolen. In this regard it is important to remember that the identification shown on the invoices for the oil well pumping unit was carefully made to match the spurious tag which had been placed on the oil well pumping unit. None of the principals had been accused of the theft of the oil pumping unit at the time these documents were forged, and the intent in issue was their intent at that time. Their conduct was as consistent with an effort to avoid civil liability as it was with an attempt to evade the authorities. This is only one obvious possibility of prejudice or damage to Oil Resources.

■ Furthermore, there was sufficient evidence from which the jury could infer that the documents were executed with the requisite intent to defraud. In *State v. Grider*, 74 Wyo. 88, 284 P.2d 400 (1955), reh. denied 74 Wyo. 111, 288 P.2d 766 (1955), the court quoted favorably the following language from 37 C.J.S. § 100, p. 104:

"The intent to defraud is to be inferred from the deliberate commission of a forgery. Thus knowingly passing a forged instrument as genuine is conclusive of an intent to defraud."

Certainly it cannot be said that circumstances beyond the control of the appellant, such as unusual investigative persistence on the part of the law enforcement officers, would be sufficient to foreclose the intent to defraud simply because those circumstances may have made impossible the result which appellant clearly intended.

Appellant argues with respect to the invoice signed in the name of Alvin Dade that as to this instrument, the stolen nature of the oil well pumping unit already having been discovered, there could be no question that the only purpose was to avoid detection. In our judgment, however, it was entirely proper for the jury to infer that the purpose of that instrument was to make more efficacious the other instruments which had been prepared in connection with this oil well pumping unit. Since the jury could infer that the other instruments were prepared with the requisite intent to defraud, the same intent could be attributed to the appellant with respect to this document by the jury in its role as finder of fact. Furthermore, the jury would not need to rely upon such a carryover of the fraudulent intent, but as indicated previously could well have concluded that the purpose was to inhibit Oil Resources in its effort to pursue any available remedies. Taking into account the entire set of cir-

cumstances which this record discloses, we are satisfied that the jury had before it more than ample evidence from which to infer the requisite intent to prejudice, damage or defraud.

Appellant further argues that the conspiracy conviction should be set aside because the only evidence linking the appellant with the conspiracy was the testimony of Mark Hart, an admitted co-conspirator. He relies upon the rule in Wyoming that there must be independent evidence establishing the existence of the conspiracy other than the statement of a co-conspirator alone. *Jasch v. State*, Wyo., 563 P.2d 1327 (1977). This court also has noted that because of the covert nature of the substantive crime of conspiracy, circumstantial evidence must be relied upon in the usual case in order to prove the existence of the conspiracy. *McLaughlin v. State*, Wyo., 626 P.2d 63 (1981). An examination of the circumstantial evidence in this case from which the crime of conspiracy could be inferred discloses more than ample evidence to sustain the conviction. Evidence other than the testimony of Mark Hart established that the oil pumping unit had been stolen and had then been sold to Oil Resources by D & F Oil Field Supply & Equipment; that a paper chain of title was prepared to support the validity of title to the oil pumping unit; that Alvin Dade, the original seller, was a fictitious person; that a spurious identification tag from a different type of oil pumping unit was placed upon the unit; and that the appellant was the person who prepared the forged documents. All of this was more than ample evidence to permit the jury to infer the existence of the conspiracy charged. The jury properly was instructed that the conspiracy cannot be proved by the statement of a co-conspirator alone, and we cannot assume that this instruction was ignored. We hold that the evidence to establish the conspiracy apart from the testimony of Mark Hart was more than ample, and that the crime of conspiracy was adequately demonstrated by the evidence.

Finding no error in any of the respects complained of by the appellant, we conclude that the convictions by the jury and judgment and sentence of the trial court must be affirmed.