LOTTINGER, Judge.
Lionel Harris was charged by bill of information with possession of pentazocine (a Schedule II CDS commonly known as Tal-win). La.R.S. 40:967 C. He pled not guilty and, after trial by jury, was found guilty as charged. He received a sentence of three years at hard labor. The trial court suspended this sentence, placed the defendant on active, supervised probation for 3 years, and imposed 8 special conditions of probation. One of the conditions of probation was serving 6 months in the parish prison. Additionally, the trial court ordered the defendant to pay court costs and clerk’s fees of $92.75 or, in default of payment, serve an additional 20 days in the parish jail.
The defendant has appealed, alleging six assignments of error, as follows:
1. The trial court erred in denying the defendant’s motion for a mistrial.
2. The trial court erred in overruling the defendant’s objection to the admissibility of Lt. Spillman’s statements.
3. The trial court erred in overruling the defendant’s objection to Lt. Spill-man’s testimony regarding his examination of defendant’s arm at the time of arrest.
4. The trial court erred in overruling the defendant’s objection to the in-court examination of the defendant’s arm by Lt. Spillman.
5. The trial court erred in imposing an excessive sentence and in failing to comply with the guidelines of La. Code Crim.P. art. 894.1.
6. The verdict is contrary to the law and/or evidence.
Assignment of error number six was not briefed on appeal and, therefore, is considered abandoned. Uniform Rules— Courts of Appéal, Rule 2-12.4.
PACTS
Shortly after midnight on November 23, 1985, Zachary Police Lt. Glen Spillman was driving south on Old Slaughter Road when he observed the defendant and another *436 male sitting on the edge of the road partially blocking his lane of travel. A third male was standing across from the others and several feet from the edge of the road. Lt. Spillman testified that, when he turned on his bright headlights and his spotlight to illuminate the area, he observed the defendant throw something across the road. He observed where this object landed, got out of the car, and picked it up. The object which he recovered from across the road was a syringe containing a green and yellow liquid, which was later determined to contain pentazocine. Lt. Spillman also found a bottle cap containing this green and yellow liquid and three sets of T's and Blues (the street terminology for pentazo-cine, commonly known as Talwin, and pyri-benzamine, a non-controlled antihistamine) on the ground a few inches from where the defendant was sitting.
Lt. Spillman’s partner, Reserve Officer Jerry Young, testified that he observed Lt. Spillman recover the syringe and the bottle cap. Although he did not observe the defendant throw the syringe across the road, he explained that he was watching one of the other men when Lt. Spillman told him that he saw the defendant throw something.
The two men at the scene with the defendant were later identified as Tyrus Hampton and Leroy Thompson. All three men were arrested and taken to the Zachary Police Department, but Hampton and Thompson were later released.
Lt. Spillman testified that the defendant’s left arm contained three puncture marks in line with a vein. One of the puncture marks appeared to be old, but the second appeared to be “fresh,” and the third appeared to be “really fresh.” Lt. Spillman also testified that the defendant appeared to be “sedated.”
At the trial, the defendant testified that he was drinking a beer with" Tyrus Hampton and Leroy Thompson at this particular spot beside Old Slaughter Road when the police came and arrested them. He stated that he did not throw the syringe across the road and that the pills and bottle cap found on the ground must have been left there by people who had left the area a few minutes before he and his two friends arrived. In an attempt to explain the puncture marks on his arm which Lt. Spillman observed, the defendant testified that he had been hospitalized for approximately one month in the late spring or early summer of 1985 and that, during this hospital stay, he had received intravenous injections.
Both Hampton and Thompson testified that they had gone to this particular location with the defendant to drink a beer. They indicated that this spot was located near a shade tree and was a local gathering place. Hampton and Thompson also testified that several people had just left this area when they arrived. Neither Hampton nor Thompson testified that they had ob: served the defendant with any drugs or a syringe on this occasion.
ASSIGNMENTS OF ERROR NOS.
1, 2, 3, AND 4
In assignment of error number two, the defendant contends that the trial court erred in overruling his objection to the admissibility of Lt. Spillman’s statements about puncture marks found on the defendant’s arm at the time he was arrested. In assignment of error number one, the defendant contends that the trial court erred in denying his motion for a mistrial after Lt. Spillman testified about these puncture marks in the presence of the jury. Assignments of error numbers three and four relate to the trial court’s allowing, over defense objection, Lt. Spillman to physically examine the defendant’s arm for puncture marks in the presence of the jury.
At the trial, Lt. Spillman testified that, when he arrested the defendant, he observed three puncture marks in line with one of the veins on the defendant’s left arm. Lt. Spillman testified that one of the puncture wounds appeared to be old. The second mark was real “fresh” and the third mark had a little blood showing and appeared really fresh. At this point, the defendant objected to this testimony and requested a mistrial. First, defense counsel argued that the testimony about these puncture wounds was an attempt by the *437 prosecution to demonstrate that the defendant had used drugs on previous occasions, which defense counsel characterized as prejudicial other crimes evidence. Secondly, defense counsel argued that the evidence about the older puncture wound was irrelevant and prejudicial. Defense counsel also argued that a comment on the fresh wound should not be allowed since no proper foundation was laid as to this officer’s knowledge of narcotics. The trial court overruled these objections and denied the motion for a mistrial.
On rebuttal, Lt. Spillman was called again as a witness and asked to examine defendant’s arm. Lt. Spillman did not find any track marks. Defense counsel objected and requested a mistrial which was denied.
Guilty knowledge is an essential element of the crime of possession of a narcotic drug. State v. Smith, 257 La. 896, 244 So.2d 824, 825 (1971). The prosecution must show not only that the accused possessed the substance identified as a narcotic drug, but also must show by direct or circumstantial evidence that the accused knew the substance he possessed was a narcotic drug. State v. Thomas, 329 So.2d 704, 707 (La.1976).
In State v. Smith, the defendant had been arrested and charged with possession of heroin. In that case, the defendant had thrown the heroin to the floor prior to his arrest. At the trial, the arresting officer testified that he found two scabs within the track, one less than 24 hours old, and one between 24 and 72 hours old. He also found old track marks on the defendant's arm with no recent scar tissue. In Smith, supra, the Louisiana Supreme Court concluded:
[Sjince track marks may show prior knowing possession, evidence of them is admissible in a prosecution for possession of heroin. State v. Oliver, 247 La. 729, 174 So.2d 509 (1965). While not evidence that the accused possessed, this heroin on this occasion, evidence of track marks is relevant as tending to prove that the accused knew that such substance (if possessed) was heroin, an essential element of the proof required for conviction. (Emphasis by Supreme Court) 244 So.2d at 825-826.
Since Smith, the only case as to the admissibility of track marks as evidence is State v. Risen, 357 So.2d 531 (La.1978). In Risen, defendant was found guilty of attempted possession of heroin. Officers stopped at a New Orleans bar to question some individuals. The interviews were concluded, and one of the officers went to the restroom and observed defendant and two other individuals crowded around a co-mode. The officer saw defendant shove a plastic envelope in the open part of a toilet paper roll. It was later determined to contain heroin. At the trial, an expert in the field of identifying track marks was called. He examined defendant’s arm on the date of arrest and found evidence of track marks consisting of both scabs and fresh punctures. The issue was whether testimony as to track marks indicates other crimes evidence such that defendant is to be given notice before trial. The Supreme Court affirmed the decision of the trial court stating that the objections raised by defendant’s counsel at trial did not preserve this issue for its review. The Supreme Court went further and stated that the evidence of narcotics injections will almost always constitute evidence of prior criminal acts of illegal narcotics possession and that in Risen, the evidence of those track marks was evidence of other criminal acts such that the prerequisite set forth in State v. Prieur, 277 So.2d 126 (La.1973) was applicable.
The Supreme Court’s ruling in Risen as it relates to track marks was dicta since that issue was not properly before the court. We accept this dicta as a guide in our decision and find that the older track marks were evidence of other crimes requiring Prieur notice. But, the fresh track mark with blood was evidence not of other crimes but of the illegal narcotics possession that defendant was charged with in this case. Therefore, testimony about this track mark was not evidence of other crimes.
*438 As to the in-court examination of defendant’s arm for track marks, such evidence has been allowed in cases involving possession of narcotics with intent to distribute. This evidence has been held relevant to prove that the defendant was selling the narcotics rather than possessing them for personal use. State v. Perique, 340 So.2d 1369, 1375 (La.1976). State v. Brown, 479 So.2d 464, 468 (La.App. 1st Cir.1985).
In the case sub judice, defendant is charged with possession of pentazocine. In accordance with Perique and Brown, we hold that the examination of defendant’s arm for track marks at trial was irrelevant to the charge of possession, and the objection should have been sustained. However, we also hold that the examination was not reversible error under the facts of this case. The absence of track marks when defendant was examined at trial was favorable to defendant on the possession charge. Thus, this assignment is without merit.
Due to the substantial evidence of guilt in the instant case, the errors committed were harmless. See State v. Gray, 262 La. 53, 262 So.2d 367, 369 (1972); State v. Perry, 408 So.2d 1358, 1362 (La.1982).
For the above reasons, these assignments of error are meritless.
ASSIGNMENT OF ERROR NO. 5
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines in La.Code Crim.P. art. 894.1.
La.Code Crim.P. art. 894.1 requires the trial court to weigh both aggravating and mitigating circumstances in determining whether or not to impose incarceration. While the trial court is not required to articulate every such circumstance in imposing sentence, the record must reveal adequate consideration of the guidelines enumerated in article 894.1. State v. Banks, 457 So.2d 1264 (La.App. 1st Cir. 1984).
After reviewing the article 894.1 guidelines, we find that the sentencing record reflects that the trial court found several aggravating circumstances. Although the presentence investigation indicated that the defendant was classified as a first felony offender, the trial court noted that the defendant’s criminal record indicated a total of eight prior arrests, including his arrest for the instant offense. As a juvenile, the defendant was arrested three times, once for burglary and twice for theft. Excluding the instant offense, the defendant’s adult criminal record indicated arrests for simple battery, simple criminal damage to property, aggravated battery, disturbing the peace, and a recent arrest for criminal trespass. The trial court also noted that the defendant admitted that he was a drug user during interviews conducted for the preparation of the presentence investigation report.
In addition to the defendant’s criminal history, the trial court also considered the defendant’s family background, education, and employment history. After considering all of the above factors, the trial court decided to place the defendant on probation. However, the trial court also concluded that, as part of this sentence of probation, the defendant should receive some time in the parish jail.
Article 1, § 20, of the Louisiana Constitution prohibits the imposition by law of excessive punishment. Furthermore, the jurisprudence reflects that a sentence may violate a defendant's constitutional right against excessive punishment although the sentence is within statutory limits. State v. Jones, 412 So.2d 1051, 1056 (La.1982). However, the trial court has wide discretion in the imposition of sentences, and a sentence within statutory limits will not be set aside in the absence of an abuse of discretion. State v. Wardlow, 448 So.2d 257, 259 (La.App. 1st Cir.1984).
Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than a needless imposition of pain and suffering. State v. Gray, 461 So.2d 627, 631 (La.App. 1st Cir.1984). A sentence is considered grossly disproportionate if one’s sense of justice is shocked when consider *439 ing the punishment in light of the harm done to society. State v. Gray.
For the instant conviction, the defendant was exposed to a maximum sentence of five years at hard labor and a maximum fine of $5,000.00. See La.R.S. 40:967 C (1). However, the defendant received a suspended sentence of three years at hard labor and no fine. Although the trial court placed the defendant on active, supervised probation for three years with eight special conditions, including one special condition that the defendant serve six months in the parish jail, it is obvious that the trial court fashioned this sentence in an attempt to rehabilitate the defendant, rather than punish him. In light of the reasons for sentencing given by the trial court, and considering the circumstances of the instant offense, we find that the sentence imposed in this case is neither grossly disproportionate to the offense nor an abuse of the trial court’s great discretion.
For the above reasons, this assignment of error is meritless.
PATENT SENTENCING ERROR
In addition to the suspended sentence and term of probation which the defendant received in this case, the trial court also ordered the defendant to pay court costs and clerk’s fees in the amount of $92.75. In default of payment of these court costs and clerk’s fees, the trial court ordered that defendant serve an additional twenty days in the parish jail. The Louisiana Supreme Court has held that in cases involving indigents a jail sentence cannot be imposed in default of payment of a fine or court costs. See State v. Williams, 480 So.2d 432, 439 (La.App. 4th Cir.1985), writ granted, 484 So.2d 662 (La.1986); State v. Garrett, 480 So.2d 412, 414 (La.App. 4th Cir.1985), writ granted, 484 So.2d 662 (La. 1986). See also State v. Bohanna, 491 So.2d 756, 758 (La.App. 1st Cir.1986).
The record indicates that the defendant was indigent and was represented by the Public Defender’s Office. Had the case sub judice involved additional jail time in default of payment of a fine, we would be forced to remand the case to the trial court for resentencing, since the determination of the amount of the fine would involve sentencing discretion. However, since the instant case involved additional jail time in default of payment of court costs and clerk’s fees, we merely delete that portion of the sentence imposing an additional twenty days in the parish jail should the defendant fail to pay court costs and clerk’s fees of $92.75.
Therefore, the conviction and sentence, as amended, are affirmed.
CONVICTION AFFIRMED AND SENTENCE AMENDED.