**Jay SCHIEFER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 87-214.**

Supreme Court of Wyoming.

May 12, 1989.

Julie D. Naylor, Appellant Counsel, Public Defender Program, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Karen A. Byrne, Asst. Atty. Gen. (argued), for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Retired.*

CARDINE, Chief Justice.

Appellant, Jay Schiefer, seeks review of a judgment and sentence of the district court which, in a trial to the court without a jury, found him guilty of forgery as provided in W.S. 6-3-602(a)(ii).

We affirm the conviction but vacate the requirement that Schiefer reimburse the costs of his court-appointed counsel.

The victim of this crime, Margaret Buchman, is an elderly woman in poor health who lived alone in a small apartment in Gillette, Wyoming. Schiefer lived across the street from Mrs. Buchman and, during a two-year period ending in September 1986, helped her by doing such things as cashing her social security checks, paying

* Retired June 29, 1988.

bills, shopping for groceries, doing laundry, and getting her medications. In September 1986, Mrs. Buchman's daughter moved in with her and she no longer required Schiefer's assistance. Mrs. Buchman's social security check had been delivered to a post office box belonging to Schiefer's mother. A change of address was effected by Mrs. Buchman after her daughter began living with her. Mrs. Buchman testified that, while Schiefer was helping her, he would bring her social security checks to her and she, being unable to read or write, signed her "X" and Schiefer cashed them at a local market. He then used the money to pay bills, buy groceries, and purchase her medications. While all this information is relevant to an understanding of the case, we note at this juncture that no problem ever arose with regard to the cashing of the social security checks. However, in addition to the social security checks, Mrs. Buchman received each year, in December, a sales tax refund check from the State of Wyoming. In 1985, this check was issued to her in the amount of $630. Mrs. Buchman gave Schiefer $300 out of this check for repairs to the car he used in running the errands he did for her. Mrs. Buchman did not change the mailing address for delivery of this check and, in December 1986, it was delivered to the post office box to which Schiefer had access. Mrs. Buchman informed Schiefer that she did not want him to cash the 1986 refund check. She testified that she never authorized Schiefer to sign her "X" to the check; did not sign her "X" to it; and specifically told Schiefer that she needed all of the money from the check but would give him $50 from it.

There was evidence presented at trial establishing that Schiefer cashed the 1986 refund check at the market where he regularly had cashed Mrs. Buchman's other checks. The market required that the checks cashed by Schiefer have Mrs. Buchman's "X" on them and, in addition, that he sign as the individual who had cashed the checks. When Mrs. Buchman did not receive her 1986 refund check, she sought help from the police department. A Gillette police officer requested that Schiefer

surrender the check. Schiefer provided the officer with $330, indicating that was the amount of the check he had cashed. The check itself was produced into evidence, and it was made out to Mrs. Buchman in the amount of $630 and had been cashed by Schiefer. Although Schiefer did not testify at trial, it was not disputed that he cashed the check.

Schiefer raises three issues in this appeal:

1. He contends there was insufficient evidence of intent to commit fraud.

2. He asserts that his prior relationship with Mrs. Buchman made him her agent and this, combined with her acceptance of the $330 tendered her through the police officer, constitutes a ratification of the unauthorized signature negating the crime of forgery.

3. He contends the district court's assessment of reimbursement for court-appointed counsel is incorrect.

## SUFFICIENCY OF EVIDENCE OF INTENT

■ We apply the same test to a challenge of sufficiency of evidence whether trial is to the court or to a jury. *Washington v. State*, 751 P.2d 384, 387 (Wyo.1988). Applying that test, we determine whether the evidence is sufficient to support a reasonable inference of guilt beyond a reasonable doubt, to be drawn by the fact finder, when the evidence is viewed in a light most favorable to the State. *Id.*

In this case the district court made a specific finding that Schiefer "had the requisite intent to defraud by obtaining money which he was not entitled to by cashing the check." There is no question but that the crime of forgery has as one of its elements a specific intent, i.e., a "fraudulent intent." *Grable v. State*, 649 P.2d 663, 676 (Wyo. 1982). Schiefer claims there was absolutely no evidence of intent to defraud and, on the contrary, the evidence showed that Schiefer told Mrs. Buchman that he had received the check, that he gave her $330 from the check, that Mrs. Buchman said she would give him $50 from the check,

and that the previous year Mrs. Buchman had given Schiefer $300 from her refund check. Further Schiefer claims that

> "there was only a misunderstanding of how much money [Schiefer] was entitled to for his services of cashing the check: the $300 that he received the year before, or the $50 that Mrs. Buchman said she was going to give him in 1986. This case is quite simply a contract dispute in which the State has decided to intervene and press charges."

Initially, we must acknowledge that the evidence presented at trial does not support Schiefer's contention that this was merely a contract dispute. Schiefer's factual scenario is not supported by the record; but more importantly, it wholly ignores the test we apply in evaluating the sufficiency of evidence. When the evidence is viewed in a light most favorable to the State, there is sufficient evidence to support the conclusion that Schiefer cashed the 1986 refund check without having authority to do so. Indeed, Schiefer cashed the check contrary to Mrs. Buchman's specific directions, and he did so with the intent of defrauding her of at least $300. We perceive Schiefer as really contending that there was no "direct" evidence of his intent. Specific intent to commit a crime may be shown by circumstantial evidence. *Jones v. State,* 568 P.2d 837, 845 (Wyo.1977). The mind of an alleged offender may be read from his acts, his conduct, his words and the reasonable inferences which may be drawn from the circumstances of the case. To hold otherwise would create an impossible burden in a case requiring a finding of specific intent. Id. We hold that the evidence presented at trial was sufficient for the district court to draw an inference that Schiefer acted with the requisite specific intent to defraud Mrs. Buchman. See *Grable,* 649 P.2d at 676; *State v. Grider,* 74 Wyo. 88, 284 P.2d 400, 407 (1955).

### RATIFICATION

█ Schiefer contends that Mrs. Buchman ratified his forgery of her signature by accepting $330 from him, and therefore he is guilty of petty larceny rather than forgery. To sustain this contention, he relies upon the Uniform Commercial Code which provides that: "Any unauthorized signature may be ratified for all purposes of this article." W.S. 34–21–341(b). The comments pertaining to this code provision state that it neither affects the criminal law nor does it relieve a signer of criminal liability. 6 Anderson, Uniform Commercial Code, § 3–404:1, p. 142 (3rd ed. 1984). Schiefer also cites the cases *Rowray v. Casper Mut. Building & Loan Ass'n,* 48 Wyo. 290, 45 P.2d 7 (1935) and *People v. Bendit,* 111 Cal. 274, 43 P. 901 (1896), in support of this argument, but we are unable to perceive any application of these cases to the issues raised here. We hold the evidence was sufficient to support the conviction of forgery.

### REIMBURSEMENT FOR SERVICES OF COURT–APPOINTED COUNSEL

█ Schiefer asserts that the district court improperly required him to reimburse the State of Wyoming and the County of Campbell for the services of his court-appointed counsel as a part of his sentence. In Schiefer's sentence, the district court directed that he reimburse $1500 for his court-appointed counsel and, further, the district court reserved the right to make an additional assessment for attorney's fees at the conclusion of any appeal. We agree that the entire assessment is improper. The assessment was made pursuant to W.S. 7–6–106(d) which had an effective date of May 22, 1987. That statute provides that where probation is granted, as it was in this case, "the court shall order the needy person * * * to repay the state for expenses and services provided by appointed attorneys pursuant to the state public defender's standard fee schedule." Schiefer committed his crime and was found guilty prior to the effective date of W.S. 7–6–106(d). There was no similar provision in the statutes in existence at the time Schiefer committed his crime. See Public Defender Act, §§ 7–1–107 through 122, W.S.1977 (currently W.S. 7–6–102 through 114).

■ We have recently held in a similar context that an increase in the potential sentence for a crime, which becomes effective after commission of the criminal act, is a substantive detriment in violation of the ex post facto prohibition of the Wyoming Constitution, Art. 1, § 35, and the United States Constitution, Art. 1, § 10. *Loomer v. State,* 768 P.2d 1042 (Wyo.1989). The statutory provision at issue here is a substantive detriment; therefore the district court could not require Schiefer to make reimbursement for the costs of court-appointed counsel. Although our disposition of this issue also precludes the district court from reserving the right to assess additional attorney fees for an appeal, such issue may likely arise again, and so we address it briefly. The statutes make no provision for assessment of attorney fees by the district court upon conclusion of the appeal. Such assessment cannot be made before or after the effective date of W.S. 7–6–106(d). Paragraph 6 of the sentence is vacated.

The judgment and sentence of the district court is affirmed except as modified.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, concurring in part and dissenting in part.

As originally assigned to write this opinion, I specially concur in affirming the conviction of the crime of forgery. The place where I specifically differ from the majority as now written is in regard to features of assessed punishment.

## I. GUILT ISSUES

Before reaching the fine and penalty questions resulting from the sentence, I would further discuss my perception of the ratification defense by special concurrence. This defense was strongly presented by appellant, Jay Schiefer (Schiefer), to deny crime commission.

By this argument, Schiefer attacks proof of the fraudulent intent required for conviction. The defense is factually based upon the acceptance by Mrs. Margaret Buchman (Buchman) of a portion of the check proceeds delivered by Schiefer.

My address to the subject considers that ratification is not an issue, whether justified by W.S. 34–21–341 (U.C.C. § 3–404) or not, since ratification is not a defense to the fraudulent intent element of forgery. For a general discussion of ratification, see Annotation, *What Constitutes Ratification of Unauthorized Signature Under UCC § 3–404,* 93 A.L.R.3d 967 (1979).

Schiefer's reliance on the U.C.C. and *Rowray v. Casper Mut. Building & Loan Ass'n,* 48 Wyo. 290, 45 P.2d 7 (1935) as dispositive of this ratification-defense issue is misplaced. While this court did say in *Rowray,* 45 P.2d at 12–13, "a signature written in a party's absence may be adopted even when forged," that case is clearly distinguishable from the case at bar. *Rowray* involved a civil action and questioned the effect of the formal acknowledgment of a mortgage and promissory note which allegedly bore the wife's forged name. Additionally, *Rowray,* 45 P.2d at 13 distinguished the terms ratification and adoption—"accurately speaking a ratification is an adoption and more." In context, that case is not precedent for ratification to be used as a defense to criminal forgery.

Furthermore, the crime of forgery, although requiring a fraudulent intent, does not require that anyone actually be defrauded. 2 W. LaFave and A. Scott, Substantive Criminal Law § 8.7(j)(5) (1986); R. Perkins and R. Boyce, Criminal Law ch. 4, § 8 (3d ed. 1982); M. Wingersky, A Treatise on the Law of Crimes (Clark & Marshall) §§ 12.32 and 12.33 (6th ed. 1958); 2 W. Burdick, The Law of Crime § 663 (1946). See also, *Miller v. State,* 732 P.2d 1054 (Wyo.1987), restitution is not necessarily a defense to obtaining property by false pretenses because the crime is complete upon the transfer. Since the criminality is assessed upon one's mental condition at the time of the act, restitution and ratification are inappropriate defenses; simply, any after-thoughts that appellant may later develop are irrelevant to the

earlier occurrence of the crime.[1] See *Miller*, 732 P.2d 1054.

## II. TERMS OF THE SENTENCE

I find two basic problems with the complex sentence entered in this case.

1. A fundamental finance related punishment is presented for a convicted defendant without demonstrated funds or earning capacity; and

2. The Wyoming statutes on restitution, cost repayment, and fines have been amended substantially since the date of offense and may have been considered for the sentence entered.

After the bench trial where Schiefer was found guilty of forgery, he was sentenced to a penitentiary term of not less than fifteen months nor more than thirty months, fined $1000, assessed the $25 victim's surcharge, and then with the confinement sentence suspended, placed on probation for a period of three years with conditions which included:

5. Make restitution to the victim of this crime pursuant to Wyoming Statute 7–13–109 and the Court specially finds the amount of pecuniary damages to each victim of the defendant's criminal activities as follows: Three Hundred Dollars ($300.00) to be paid to Margaret Buchman for which execution may issue.

6. Reimburse the State of Wyoming and the County of Campbell for the services of court-appointed counsel according to the schedule established. The Court determines the reasonable value of the legal services provided to be One Thousand Five Hundred Dollars ($1,500.00). The Court reserves the right to assess additional attorney's fees at the conclusion of any appeal of this case.

7. Make regular periodic payments until the fine, restitution and attorney fees are fully paid:

a. Payments shall be as established or revised by a probation officer based upon the ability to pay but not less than One Hundred Twenty Five Dollars ($125.00) per month. (If the defendant is unable thru reasonable diligence to make the minimum payment required he may petition the Court for hearing on that issue).

\* \* \* \* \* \*

IT IS FURTHER ORDERED that pursuant to Wyoming Statute § 7–13–303 and Wyoming Statute § 7–13–702 et. seq., the defendant shall perform work as an additional condition of probation. The work shall be performed whenever the defendant fails to make the minimum payments required for fines, costs or attorney fees and regardless of payment history, and may be required by the probation officer when work is available and performance of the work would not interfere with the defendant's employment. The work shall be performed under the supervision of the Campbell County Sheriff and credit for the work shall be granted at the statutory rate, first against the fines, then against attorney fees and costs. The defendant may pay off his fines and attorney's fees by working at a rate of Four Dollars ($4.00) per hour but must pay his restitution in cash.

and

[I]n the event of a revocation of probation no credit will be given for time successfully served on probation.

---

1. This was a difficult case for the trial court to try and was conducted with great care and patience by the trial judge. Buchman could neither read nor write and had a very severe speech impediment at the time of trial. Irene McClure, daughter of Buchman and as principal antagonist, could neither read nor write and was on probation from a felony conviction. Mama Kate, mother of Schiefer, who was involved, was deceased by trial date. Schiefer did not testify. Another daughter of Buchman, who lived in Gillette but had not seen her mother for a year, testified for the defense as a subpoenaed witness. Examination of Buchman was conducted at her home and all participants (except to a singularly lesser degree the court reporter) had difficulty in understanding her because of the confining speech defect. The defense that Mama Kate and her son kept the money so the daughter would not steal it floundered on admissibility from hearsay problems. The death of Mama Kate before trial, the election of Schiefer not to testify, and the lack of relevance of the "safe keeping" motive for the funds which were retained by Schiefer, were sufficient evidence for the court to find a forgery conviction.

This dissent is confined to question provisions as stated in the sentence *where ability to pay has neither been found nor demonstrated.* Obviously, constitutional limitations of equal protection and due process and on imprisonment for debt must superintend upon any validity analysis.

In first juncture, although in agreement with the majority in denial of attorney's fee assessments, I reach that result and consider the other questions about the general monetary terms of the sentence provisions with a more detailed analysis.

The dates of the offense and subsequent proceedings become important because of the many changes which took place in the criminal sentencing statutes during the time frame of this case.[2] New sentencing statutes more recently enacted [3] to be even more restrictive and punitive cannot be applied to Schiefer. W.S. 8-1-107 reflects the legislative codification of this view and provides:

If a statute is repealed or amended, the repeal or amendment does not affect pending actions, *prosecutions* or proceedings, civil or *criminal.* If the repeal or amendment relates to the remedy, it does not affect pending actions, *prosecutions* or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of action, *prosecutions* or proceedings existing at the time of the amendment or repeal, unless otherwise expressly provided in the amending or repealing act.

Since the most current legislature is silent in the pertinent amending and repealing provisions, the changes cannot affect Schiefer's sentencing if enacted since the crime occurred. Further, the legislature, in the savings clause of the 1982 Wyoming Criminal Code, expressed the intent that the laws applicable to criminal prosecutions are the ones in effect on the date when the crime occurred. See W.S. 6-1-101 (June 1983 Replacement). *Attletweedt v. State,*

**2.** The date of the offense was December 3, 1986. The trial was held May 6, 1987, and the judgment was filed May 15, 1987. The sentencing hearing occurred on July 24, 1987 with the formal sentence being entered August 11, 1987.

**3.** The changes include:

1. Fine: Schiefer was sentenced under W.S. 7-11-515 found in Wyo.Sess. Laws ch. 147, § 2 (1985); effective July 1, 1986, which has been amended and renumbered in 1987 to W.S. 7-11-504 [Wyo.Sess. Laws ch. 157, § 4 (1987); effective May 22, 1987].

2. Restitution: W.S. 7-13-109 (1986 Cum. Supp.) [Wyo.Sess. Laws ch. 27, § 1 (1984); effective June 5, 1984] and W.S. 6-10-110 (1986 Cum.Supp.) [Wyo.Sess. Laws ch. 72, § 1 (1985); effective May 23, 1985] were in effect at the date of the offense. However, the legislature in 1987 amended and renumbered much of the restitution sections which can now be found in Wyo.Sess. Laws ch. 157, § 3 (1987), effective May 22, 1987. Specifically, W.S. 7-13-109 (1986 Cum.Supp.) pertaining to the determination of restitution owed by a defendant correlates with W.S. 7-9-103. W.S. 6-10-110 (1986 Cum.Supp.) was also amended in 1987, but only to reflect the renumbering of the restitution statutes.

3. Surcharge: The victim's compensation statute in effect at the time of the offense was W.S. 1-40-119 (1986 Cum.Supp.) [Wyo.Sess. Laws ch. 213, § 1 (1985); effective May 23, 1985], which provided for the $25 surcharge. In 1987, the legislature substantially revamped this statute and raised the surcharge monetary amount to $50. W.S. 1-40-119 [Wyo.Sess.Laws. ch. 154, § 1 (1987); effective May 22, 1987].

4. Attorney's Fees and Costs: The provisions allowing the assessment of attorney's fees and costs to a non-needy person were W.S. 7-1-110 (1977) [Wyo.Sess. Laws ch. 170, § 1 (1977); effective July 1, 1978] and W.S. 7-1-112 (1977) [Wyo.Sess. Laws ch. 170, § 1 (1977); effective July 1, 1978]. These statutes were modified, expanded, and renumbered to be W.S. 7-6-104 and 7-6-106 in 1987 [Wyo. Sess. Laws ch. 157, § 3 and ch. 176, § 1 (1987); effective May 22, 1987]. Moreover, W.S. 7-1-114 (1977) [Wyo.Sess. Laws ch. 170, § 1 (1977); effective July 1, 1978], which permitted the recovery of the expenditure for attorney's fees, became W.S. 7-6-108 [Wyo. Sess. Laws ch. 157, § 3 and ch. 176, § 1 (1987); effective May 22, 1987].

5. Work as a Condition of Probation: Imposed under W.S. 7-13-303 (1986 Cum.Supp.) [Wyo.Sess. Laws ch. 68, § 1 (1984); effective June 5, 1984], which was amended and renumbered in 1987 to become W.S. 7-13-304 [Wyo.Sess. Laws ch. 157, § 3 (1987); effective May 22, 1987]. Additionally, the statutes governing the restrictions on work at the time of the offense were W.S. 7-13-701 through 7-13-704 (1986 Cum.Supp.) [Wyo.Sess. Laws ch. 68, § 1 (1984); effective June 5, 1984], which were amended and became W.S. 7-16-101 through 7-16-104 [Wyo.Sess. Laws ch. 157, § 3 (1987); effective May 22, 1987].

684 P.2d 812 (Wyo.1984). Consequently, we need not explore the constitutional doubts about ex-post facto enactments prohibited by Wyo. Const. art. 1, § 35.

### A. *Analysis*

Although the only aspect of the sentence challenged by Schiefer in his brief was the assessment of attorney's fees, the propriety of assessing the $1000 fine, $300 restitution, and $25 surcharge for victim's compensation against him *as terms of probation* contravening the imprisonment for debt constitutional prohibition lacking any demonstration of ability to pay were raised in oral argument.

Imprisonment for debt is usually thought of as a barbarous custom which declined continuously as civilization and Christianity advanced and which was totally done

away with long ago. The facts, however, are otherwise.

Ford, *Imprisonment For Debt*, 25 Mich.L. Rev. 24, 24 (1926).

Wyo. Const. art. 1, § 5 provides that "[n]o person shall be imprisoned for debt, except in cases of fraud." [4] While the instant case did involve forgery which has a fraudulent intent element, fraud is distinguishable from intent to defraud and is not an element of forgery. *Century Federal Sav. and Loan Ass'n of Long Island v. Roudebush*, 618 F.2d 969, 971 (2d Cir.1980); *Milton v. United States*, 71 App.D.C. 394, 110 F.2d 556, 561 (1940); *People v. Rising*, 207 N.Y. 195, 198, 100 N.E. 694 (1912). Therefore, we must address whether Schiefer's sentence constitutes imprisonment for debt under the Wyoming constitutional restraint.[5]

---

**4.** See *State v. Laude*, 654 P.2d 1223, 1228 (Wyo. 1982) for a case discussing imprisonment for debt and the worthless check statute.

An exception for fraud is an integral part of many state constitutional prohibitions against imprisonment for debt. Provisions identical to Wyo. Const. art. 1, § 5 can be found in: Ariz. Const. art. II, § 18; Fla. Const. art. 1, § 10; Idaho Const. art. 2, § 15; Kan. Const. B. of R. § 16; N.C. Const. art. I, § 28; and S.C. Const. art. I, § 19. For states that disallow imprisonment for debt unless there is "a strong presumption of fraud," see Colo. Const. art. II, § 12; Ill. Const. art. 1, § 14; Ky. Const. B. of R. § 18; Mont. Const. art. II, § 27; N.D. Const. D. of R. § 15; Pa. Const. art. 1, § 16; and R.I. Const. D. of R. § 11. Confinement of imprisonment for debt provisions to civil actions occur in some states such as Ark.D. of R. § 16; Iowa, B. of R. § 19; Neb.B. of R. § 20; and Ohio Const. art. I, § 15. While there are many variations of the same theme among the states, fraud is an exemption from imprisonment for debt provisions in Ind. Const. art. 1, § 22 and N.J. Const. art. 1, ¶ 13. Minnesota allows imprisonment for debt if the person was "charged with fraud in contracting said debt," Minn. Const. art. 1, § 11. Nevada excepts out libel and slander in addition to fraud, Nev. Const. art. 1, § 14, whereas Michigan exempts cases of breach of trust plus fraud, Mich. Const. art. I, § 21. Oregon mandates that imprisonment for debt is prohibited except in cases of fraud or "absconding debtors," Or. Const. art. I, § 12, and Utah in Utah Const. art. I, § 17 and Washington in Wash. Const. art. 1, § 16, limit the permissible scope of imprisonment for debt to cases of absconding debtors.

**5.** For the extensive sources of analysis of imprisonment for debt under the United States Constitution through the Equal Protection

and/or Due Process clauses, see Michelman, *Foreword: On Protecting the Poor Through the Fourteenth Amendment*, 83 Harv.L.Rev. 7 (1969); Goldberg, *Equality and Governmental Action*, 39 N.Y.U.L.Rev. 205 (1964); Rogge, *A Technique For Change*, 11 U.C.L.A.L.Rev. 481 (1964); Freedman, *Imprisonment For Debt*, II Temp.L.Q. 330 (1928); Ford, supra, 25 Mich.L. Rev. 24; Comment, *Imprisonment For Debt And The Constitution*, 1970 L. & Soc.Ord. [Ariz.St. L.J.] 659 (1970) (offering an overview of imprisonment for civil debt); Comment, *Jail Fees and Court Costs for the Indigent Criminal Defendant: An Examination of the Tennessee Procedure*, 35 Tenn.L.Rev. 74 (1967); Comment, *Equal Protection and the Use of Fines as Penalties For Criminal Offenses*, 1966 U.Ill.L.F. 460 (1966); Comment, *Constitutional Law: Imprisonment For Debt*, 4 Calif.L.Rev. 331 (1916); Note, *Fines, Imprisonment, and The Poor: "Thirty Dollars or Thirty Days"*, 57 Calif.L.Rev. 778 (1969); Note, *Imprisonment for Nonpayment of Fines and Costs: A New Look at the Law and the Constitution*, 22 Vand.L.Rev. 611 (1969); Note, *Discriminations Against the Poor and the Fourteenth Amendment*, 81 Harv.L.Rev. 435 (1967); Note, *The Equal Protection Clause and Imprisonment of the Indigent for Nonpayment of Fines*, 64 Mich.L.Rev. 938 (1966); Note, *Criminal Costs Assessment in Missouri—Without Rhyme or Reason*, 1962 Wash.U.L.Q. 76 (1962); Note, *Present Status of Execution Against The Body of the Judgment Debtor*, 42 Iowa L.Rev. 306 (1957); Note, *Fines and Fining—An Evaluation*, 101 U.Pa.L.Rev. 1013 (1953); Note, *Limitations on State Legislation Imposed by Constitutional Guaranties Against Imprisonment for Debt*, 41 Harv.L.Rev. 786 (1928); Note, *Imprisonment For Debt*, 3 Calif.L.Rev. 137 (1914); Recent Case, *Equal Protection—An Indigent Cannot Be Imprisoned For His Inability To Pay A Fine,*

W.S. 7–11–515 (Wyo.Sess.Laws ch. 147, § 2)[6] did allow a defendant to be committed to jail until the fine and costs are paid, and W.S. 7–13–109 (1986 Cum.Supp.)[7] provided for restitution as part of the penal

75 Dick.L.Rev. 528 (1971); and Recent Decision, *Constitutional Law—Imprisonment for Debt—Imprisonment for Fraud Distinguished,* 35 Va.L. Rev. 113 (1949).

More infrequently, courts have analyzed the imprisonment for debt issue that occurs with an indigent criminal defendant under the U.S. Const. amend. VIII proscription against cruel and unusual punishment and excessive fines. See *Grimes v. Miller,* 429 F.Supp. 1350, 1355 (N.C.), aff'd 434 U.S. 978, 98 S.Ct. 600, 54 L.Ed. 2d 473 (1977); *Abbit v. Bernier,* 387 F.Supp. 57, 60 n. 7 (D.Conn.1974); and *People v. Saffore,* 18 N.Y.2d 101, 271 N.Y.S.2d 972, 218 N.E.2d 686 (1966).

6. W.S. 7–11–515 (Wyo.Sess. Laws ch. 147 § 2) provided:

If a defendant sentenced to pay a fine or costs defaults in payment, the court may order the defendant to show cause why he should not be committed to jail. If the court finds that the defendant's default is willful or is due to a failure on defendant's part to make a good faith effort to obtain the funds required for payment, the court may order him committed until the fine or costs, or a specified part thereof, is paid. The defendant shall be given a credit for each day of imprisonment at the rate provided by W.S. 6–10–105, and may earn additional credits against his fine or costs for work performed as provided by W.S. 7–13–701 through 7–13–704.

7. W.S. 7–13–109 (1986 Cum.Supp) provided in part:

(b) At the time of sentencing a defendant for any misdemeanor or felony conviction, if the court desires to require restitution, the court shall fix a reasonable amount as restitution owed to each victim for pecuniary damages resulting from the defendant's criminal activity, and shall include its determination as a special finding in the judgment of conviction.

Moreover, W.S. 6–10–110 (1986 Cum.Supp.) provided:

In addition to any other punishment prescribed by law the court may, upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as prescribed under W.S. 7–13–109.

8. W.S. 1–40–119 (1986 Cum.Supp.) provided in part:

(a) In addition to any fine or other penalty prescribed by law, a defendant who pleads guilty to or is convicted of the following criminal offenses shall be assessed a surcharge as provided by this subsection:

sentence. Further, the legislature allowed the assessment of a victim's compensation surcharge in W.S. 1–40–119 (1986 Cum. Supp.)[8], and the taxing of attorney's fees was permitted in W.S. 7–1–110 (1977).[9]

(i) For any felony offense, a surcharge of twenty-five dollars ($25.00).

9. W.S. 7–1–110 (1977) provided in part:

(a) A needy person who is being detained by a law enforcement officer, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is entitled:

(i) To be represented by an attorney to the same extent as a person having his own counsel is so entitled; and

(ii) To be provided with the necessary services and facilities of representation (including investigation and other preparation).

(b) The attorney, services and facilities, and court costs shall be provided at public expense to the extent that the person, at the time the court determines need, is unable to provide for their payment.

Moreover, part of W.S. 7–1–112 (1977) supplied the criteria of determination of a needy person:

(a) The determination of whether a person covered by W.S. 7–9.20 [§ 7–1–110] is a needy person shall be deferred until his first appearance in court or in a suit for payment or reimbursement under W.S. 7–9.24 [§ 7–1–114], whichever occurs earlier. Thereafter, the court concerned shall determine, with respect to each proceeding, whether he is a needy person.

(b) In determining whether a person is a needy person and in determining the extent of his inability to pay, the court concerned shall consider such factors as income, property owned, outstanding obligations and the number and ages of his dependents. Release on bail does not necessarily prevent him from being a needy person. In each case, the person, subject to the penalties for perjury, shall certify in writing or by other record such material factors relating to his ability to pay as the court prescribes.

(c) To the extent that a person covered by W.S. 7–9.20 [§ 7–1–110] is able to provide for an attorney, the other necessary services and facilities of representation, and court costs, the court may order him to provide for their payment.

Further, W.S. 7–1–114 (1977) provided for recovery of payment:

(a) The attorney general may, by suit within six (6) years after the date the services were rendered, on behalf of the state, recover payment or reimbursement, as the case may be, from each person who has received legal assistance or another benefit under this act:

(i) To which he was not entitled;

(ii) With respect to which he was not a needy person when he received it; or

Consequently, with the monetary aspects of the sentence imposed, an analysis is required whether these statutes were constitutionally applied to Schiefer.

The United States Supreme Court in a trilogy [10] of cases has been faced with the conflict of an indigent defendant and constitutionally allowable sentencing.[11] The first chapter of this law was developed in *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), which found, under the Equal Protection Clause, that a sentence was unconstitutional which extended the maximum confinement when a defendant had not satisfied the monetary provisions of his sentence. The second case is *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), where the court determined that it was improper to imprison a defendant solely because of his indigence when the offenses which precipitated the fines were municipal in nature and were punishable by fines only. The third and most recent case of *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) has the most application to Schiefer because both situations involve fines and restitution as conditions of probation. In *Bearden*, 103 S.Ct. at 2070, the court held "if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not

thereafter imprison a person solely because he lacked the resources to pay it," although leaving open the avenue that one, whether indigent or not, could be imprisoned for willfully refusing or neglecting to pay a fine or costs.

Simply because Schiefer's probation has not been revoked, does not validate the conditions of probation placed upon him. "The fact that incarceration was imposed after a period of probation rather than immediately upon conviction is not constitutionally significant, where the only ground for the imprisonment is the inability to pay." *State v. Crawford*, 54 Ohio App.2d 86, 375 N.E.2d 69, 70 (1977). One can only be found to be in violation of a condition of probation that requires money payments if the person is in a reasonable financial position to make the payments. *Hamrick v. State*, 519 So.2d 81, 82 (Fla.App.1988); *Mack v. State*, 440 So.2d 602 (Fla.App. 1983); *Smith v. State*, 373 So.2d 76, 77 (Fla.App.1979); *Jones v. State*, 360 So.2d 1158, 1159–60 (Fla.App.1978).

Factually, this record discloses no evidence that Schiefer willfully or intentionally failed or refused to pay or gain employment to pay the monetary assessment as would be required under *Bearden*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221.[12] Fur-

---

(iii) With respect to which he has failed to make the certification required by W.S. 7–9.-22(b) [§ 7–1–112(b)].

(b) Amount recovered under this section shall be paid into the state general fund.

**10.** An early United States Supreme Court case of *Ex Parte Jackson*, 96 U.S. (6 Otto) 727, 24 L.Ed. 877 (1877) upheld the constitutionality of the imposition of a fine and then imprisonment of individuals who failed to pay. However, this trilogy apparently was sparked because by the early 1970's,

[a]lthough there were no comprehensive statistics, evidence obtained from varied sources indicated that the number of * * * [inability to pay a fine] persons incarcerated was amazingly large—one widely cited estimate placing the figure at between 40% and 60% of all inmates in county jails. This led to the "conservative estimate" that on any day nearly 28,000 persons would be in jail in the United States because they had failed to pay a fine.

Choper, *Consequences of Supreme Court Decisions Upholding Individual Constitutional*

*Rights*, 83 Mich.L.Rev. 1, 117–18 (1984) (footnotes omitted).

**11.** For cases that have held it improper to revoke an indigent's probation for failure to pay fines as being violative of the Equal Protection Clause of the United States Constitution, see *Frazier v. Jordan*, 457 F.2d 726 (5th Cir.1972); *In re Antazo*, 3 Cal.3d 100, 89 Cal.Rptr. 255, 473 P.2d 999 (1970); and *State v. De Bonis*, 58 N.J. 182, 276 A.2d 137 (1971). The Supreme Court of Hawaii, although relying on both the United States and Hawaiian Equal Protection Clauses, summarized the situation:

Equal justice is clearly lacking where an indigent like [appellant] suffers imprisonment solely because of a financial inability to pay for liberty while his more prosperous counterpart avoids confinement.

*State v. Tackett*, 52 Haw. 601, 483 P.2d 191, 192 (1971).

**12.** Although Schiefer had lost his left hand in 1969 and was thereafter able to work on drilling rigs, the record indicates that by 1982, when roughneck employment declined with oil boom

thermore, there is no actual evidence of his present employment opportunities and it is clear that he has no assets or estate for payment reliance (nor even a mother to assist). Wyoming has long held there must be an ability to pay found before monetary assessments can be a constitutional part of the criminal sentence. See *State v. Posey*, 77 Wyo. 258, 314 P.2d 833, 837 (1957), where we held:

> Just debts should be paid and the law is adequate to compel their payment *where there is an ability to pay*, but the criminal law is not a process to be subserved for that purpose. Imprisonment for debt is no longer a part of our law. [Emphasis added.]

Granted, this court previously has held a fine is not a debt. *In re MacDonald*, 4 Wyo. 150, 33 P. 18 (1893). However, in the ninety-five years that have passed since that decision, I have seen the fallacy in that view as applied to the reality faced by the indigent criminal defendant. Consequently, that case has no present validity today under decisions of the United States Supreme Court considering penal assessment of fines, restitution, surcharge,[13] and attor-

ney's fees *where ability to pay is not demonstrated.*[14]

A surcharge on the criminal penalty which funds crime victim's compensation is a form of punishment for the offense and is a fine. *State v. Champe*, 373 So.2d 874, 880 (Fla.1978). Thus, any assessment of a surcharge for a victim's compensation fund must occur only after the trial court has found the indigent defendant has the ability to pay. *Jenkins v. State*, 444 So.2d 947, 950 (Fla.1984). For an analysis of the present W.S. 1–40–119 and its relationship to the constitutional prohibition on imprisoning for debt, see the dissenting opinion in *Blakeman v. State*, 753 P.2d 1045 (Wyo. 1988). See also *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). For an overview of the victim's compensation system pertaining to Wyoming, see specifically, Comment, *Victim Compensation and Restitution: Legislative Alternatives*, XX Land & Water L.Rev. 681 (1985) and Annotation, *Statutes Providing for Governmental Compensation for Victims of Crime*, 20 A.L.R.4th 63 (1983).[15]

demise, that a change by reduction of number of workers on the drilling rigs made him essentially unemployable in that industry.

**13.** Although the term "costs" was utilized in part of the sentence, the term obviously refers to the victim's compensation surcharge. The term "costs" read in the context of the entire sentencing document was not meant to encompass the term "costs" in its generic sense, because no specific finding of an amount of costs attributable to Schiefer's conduct was ever made. Cf. *Hashimoto v. Marathon Pipe Line Co.*, 767 P.2d 158 (Wyo.1989), which discusses the more generic concept and assessment of costs after a specific monetary amount was found to be owing.

**14.** Schiefer challenges the trial court assessment against him of $1500 for the trial level constitutionally required court-appointed attorney. This issue was disposed of in *Burke v. State*, 746 P.2d 852 (Wyo.1987), where the same statute, W.S. 7–1–112 (1977), concerning the assessment of attorney's fees was questioned. We held that it was improper to require reimbursement since this liability "constituted a civil debt." *Burke*, 746 P.2d at 860. Since no finding was made of Schiefer's ability to provide funds toward this reimbursement or that he was not a needy person, the trial court attorney's fee assessments falls into the same category as the fine, restitu-

tion, and surcharge; simply, a monetary penalty burdened on an impoverished criminal defendant who lacks resources or earnings to pay.

**15.** Also of interest on this topic, see: McAdam, *Emerging Issue: An Analysis of Victim Compensation in America*, 8 Urb.Law. 346 (1976); Lamborn, *The Propriety of Governmental Compensation of Victims of Crime*, 41 Geo.Wash.L.Rev. 446 (1973); Comment, *Rehabilitation of the Victims of Crime: An Overview*, 21 U.C.L.A.L.Rev. 317 (1973); and Note, *Victim Restitution in the Criminal Process: A Procedural Analysis*, 97 Harv.L.Rev. 931 (1984). For discussions of both views of a possible constitutional amendment in this area, see: Dolliver, *Victims' Rights Constitutional Amendment: A Bad Idea Whose Time Should Not Come*, 34 Wayne L.Rev. 87 (1987); Eikenberry, *Victims of Crime/Victims of Justice*, 34 Wayne L.Rev. 29 (1987); Joutsen, *Listening To The Victim: The Victim's Role in European Criminal Justice Systems*, 34 Wayne L.Rev. 95 (1987); Kelly, *Victims*, 34 Wayne L.Rev. 69 (1987); Kilpatrick and Otto, *Constitutionally Guaranteed Participation In Criminal Proceedings for Victims: Potential Effects on Psychological Functioning*, 34 Wayne L.Rev. 7 (1987); Lamborn, *Victim Participation in the Criminal Justice Process: The Proposals For a Constitutional Amendment*, 34 Wayne L.Rev. 125 (1987); Spencer, *A Crime Victim's Views on*

The record is clear that there was no finding of ability to pay with regard to *any* of the monetary assessments charged, and I find error in the trial court's assessing the fine, restitution, surcharge, and attorney's fees after expressly finding Schiefer to be indigent.[16] This action affected a circumvention of Wyo. Const. art. 1, § 5 by using the form of imposition of probationary conditions in the criminal arena to require Schiefer to repay a civil debt after expressly determining that he was without such an ability which, as a manipulation of form over substance, cannot be condoned. See *Ex Parte Trombley*, 31 Cal.2d 801, 193 P.2d 734, 737 (1948) followed by *Trombley v. Justice's Court*, 31 Cal.2d 868, 199 P.2d 5 (1948).

The application of restitution and cost repayment statutes without a judicial finding of ability to pay are statutes designed as debt collecting devices masquerading as penal laws and contravene the constitutional prohibition against imprisonment for debt. See *Turner v. State ex rel. Gruver*, 168 So.2d 192, 194 (Fla.App.1964) (citing 16 C.J.S. Constitutional Law § 204(4) (1984)).

> When a court imposes a fine known to be beyond the ability of the defendant to pay, it has, effectively, imposed a sentence of imprisonment after determining that the policy considerations called for a financial sanction. The fine may thus become a guise for imprisoning the poor whenever the sentencing judge believes that the maximum term provided by statute is not sufficiently severe. A defendant should not be sentenced to imprisonment simply because he cannot pay a fine at the time of the judgment. The severity of the punishment should be measured by its corrective value rather than by reason of the defendant's wealth.

Note, *Imprisonment for Nonpayment of Fines and Costs: A New Look at the Law and the Constitution*, 22 Vand.L.Rev. 611, 621–22 (1969) (footnote omitted). See *God-*

*a Constitutional Amendment for Victims*, 34 Wayne L.Rev. 1 (1987); and Young, *A Constitutional Amendment For Victims of Crime: The Victims' Perspective*, 34 Wayne L.Rev. 51 (1987).

*win v. Godwin*, 268 Ark. 364, 596 S.W.2d 695, 697 (1980) for the recognition of the importance of the judicial finding of ability to pay to avoid violation of the Arkansas prohibition against imprisoning for debt. Cf. *Hicks on Behalf of Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721, in considering application of either criminal or civil contempt payment obligations.

The latitude provided by the trial court for Schiefer to "work off" his debt still does not constitutionally save the sentence since "[t]he opportunity to move for a substitution of community service *after* costs have already been assessed is not equivalent to notice of and an opportunity to object to such costs prior to their assessment." *Mays v. State*, 519 So.2d 618, 619 (Fla.1988) (emphasis added).

Additionally, the record provides no evidence that a realistic job opportunity existed in the sheriff's office for a one hand man. This was not a work sentence pursuant to W.S. 7–13–303(b) (1986 Cum.Supp.); this was a monetary assessment as restitution pursuant to W.S. 7–13–109 (1986 Cum. Supp.), which converted into probation revocation when Schiefer was without funds and lacked a demonstrated future expectancy.

### B. *Appellate Attorney's Fees*

The trial court also erred in reserving the right to assess additional attorney's fees. The trial court exceeded its jurisdiction since only this tribunal may assess appellate attorney's fees. *Dewitt v. Balben*, 718 P.2d 854 (Wyo.1986).

> "Should the procedure [whereby the supreme court awards appellate attorney fees] be considered exclusive? We think it should. Public policy and the public interest require such a holding. In the first place, appeals to the supreme court are from a judgment or 'final order' of the district court. Except for the per-

16. I understand that you may not be in a position to make these payments because you don't have a job and any source of income. The restitution, of course, has to be made in cash.

formance of further duties assigned to him under the rules or statutes, the jurisdiction of the trial judge should end with the entry of the final judgment or order appealed from.

\* \* \* \* \* \*

*"There is good reason for the supreme court rather than the district court to pass upon the need for ordering payment of an attorney's fee in an appeal, and the supreme court is in a better position to say what, under the circumstances, is a reasonable and proper fee for legal service in that court."*

Id. at 866 (quoting *Rubeling v. Rubeling,* 406 P.2d 283, 285–86 (Wyo.1965)) (emphasis in original).

As the Kansas Court of Appeals in *Olsen v. Olsen,* 7 Kan.App.2d 472, 643 P.2d 1153, 1155–56 (1982) aptly put it:

For a trial court to render an informed decision on the matter, it would have to study the appellate briefs, perhaps have a transcript of the oral arguments made before the appellate court, and study the appellate court's opinion or memorandum to decide whether the court rested its decision on any of the parties' arguments. The trial court would be asked to do what the appellate court is already in the position to do at the end of the appeal. The trial court's decision would then, of course, be subject to appeal, bringing the matter back full circle.

Also, the procedure suggested by defendant would put the trial court in the tenuous position of deciding whether an appeal from one of its own decisions was meritless or frivolous.

The trial court was putting a penalty on Schiefer's right to appeal which cannot be constitutionally approved. *Rubeling,* 406 P.2d 283.

## III. CONCLUSION

Although in the proper case constituting appropriate penal sanctions and system cost repayment obligations, fines, restitution, costs, and attorney's fees, as an implement in the criminal proceeding, are impacted similarly with due process and equal protection constraints where denied justice or resulting imprisonment for debt results from poverty.[17] As the author in a 1969 analysis recognized at a time predating more recent due process application of the United States Supreme Court:

*Yet I hope to make clear that in many instances their purposes could be more soundly and satisfyingly understood as vindication of a state's duty to protect against certain hazards which are endemic in an unequal society, rather than vindication of a duty to avoid complicity in unequal treatment.*

Michelman, *Foreword: On Protecting the Poor Through the Fourteenth Amend-*

17. An indigent person charged with felony is entitled to equal protection under the law which includes the right to representation by counsel and while he may be civilly liable for the repayment of the money expended for counsel, such debt is a civil debt and in no sense part of the costs of prosecution included in the penalty of the statute defining the criminal act under which he is charged.
*Ex Parte Wilson,* 183 N.E.2d 625, 626 (Ohio App.1962).
As Justice Black in *Griffin v. People of the State of Illinois,* 351 U.S. 12, 16–17, 76 S.Ct. 585, 589–90, 100 L.Ed. 891, reh'g denied 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480 (1956) eloquently espoused:
Providing equal justice for poor and rich, weak and powerful alike is an age-old problem. People have never ceased to hope and strive to move closer to that goal. This hope, at least in part, brought about in 1215 the royal concessions of Magna Charta: "To no

one will we sell, to no one will we refuse, or delay, right or justice.... No free man shall be taken or imprisoned, or disseised, or outlawed, or exiled, or anywise destroyed; nor shall we go upon him nor send upon him, but by the lawful judgment of his peers or by the law of the land." These pledges were unquestionably steps toward a fairer and more nearly equal application of criminal justice. In this tradition, our own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, "stand on an equality before the bar of justice in every American court." *Chambers v. Florida,* 309 U.S. 227, 241, 60 S.Ct. 472, 479, 84 L.Ed. 716. [Footnote omitted.]

*ment,* 83 Harv.L.Rev. 7, 9 (1969) (emphasis in original).

Undeniably, legislatively consecrated fines, restitution, costs, or attorney's fees payment provisions in criminal sentences constitute imprisonment for debt to the impecunious where the affluent can pay and depart without similarly denied liberty interest. Furthermore, neither the legislature nor the judiciary can repeal the economic law that ability to collect is confined by the debtor's capacity to pay. See *Blakeman,* 753 P.2d 1045 and *Whitehead v. State,* 511 N.E.2d 284 (Ind.1987), cert. denied —— U.S. ——, 108 S.Ct. 761, 98 L.Ed.2d 773 (1988). There seems to be something invidiously included in recent probation and deferred sentence legislation that escape from immediate incarceration is available only to charged defendants who have money or immediate employment opportunity. The constitutionally required ability to pay *must* be found in order to impose monetary conditions of probation or sentencing so that individuals of different economic classes truly have an opportunity to stand on equal footing before the courts of this country.[18] Comment, *Equal Protection and the Use of Fines as Penalties For Criminal Offenses,* 1966 U.Ill.L.F. 460 (1966); Note, *Fines, Imprisonment, and The Poor: "Thirty Dollars or Thirty Days",* 57 Calif.L.Rev. 778 (1969). Wyoming cannot " 'impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent * * *.' " *Bearden,* 461 U.S. at 667, 103 S.Ct. at 2070, 76 L.Ed.2d at 229 (quoting from *Tate,* 401 U.S. at 398, 91 S.Ct. at 670–71).

This court has previously recognized that it can modify by vacating or striking a part of a divisible sentence which is improper or illegal, and affirming the balance. *Laing v. State,* 746 P.2d 1247, 1250 (Wyo.1987); *Sorenson v. State,* 604 P.2d 1031 (Wyo. 1979). Finding error with the imposition of the fine, restitution, costs, surcharge, and assessment of trial court attorney's fees imposed as conditions of probation without an ability to pay demonstrated in the record, as well as error in the reservation of assessing appellate attorney's fees as being beyond the trial court's jurisdiction, I would affirm the judgment and modify the sentence to strike out the conditions of probation requiring reimbursement for attorney's fees, the reservation of attorney's fees, the restitution, the fine, costs, and the surcharge. *State ex rel. Williams v. Blackburn,* 484 So.2d 665 (La.1986); *State v. Garrett,* 484 So.2d 662 (La.1986); *State v. Harris,* 510 So.2d 434 (La.App.1987). With deletion of the monetary aspects of this sentence, the additional provision imposing work as a probationary condition for debt repayment should also be vacated.

Consequently, I concur in affirming the conviction and substantively dissent in the majority's affirmation of the improper provisions contained in the sentence.

**18.**    "As we look back upon the absurdity, impolicy, and cruelty of imprisonment for debt, we wonder what influences had stupefied the conscience and intelligence of mankind that laws so atrocious were so long endured."

Freedman, supra n. 5, II Temp.L.Q. at 365 (quoting from Dillon, The Laws and Jurisprudence of England and America 359 (1894)).